## BLACKMON *v.* BURT.

*Simmons, C. J.*—This being an action of ejectment and the plain-tiff having shown a complete title to the premises in dispute, and the defendant having failed to establish by evidence satis-factory to the jury the prescriptive title relied on as a defense, and there being no errors of law complained of, this court will not overrule the discretion of the trial judge in refusing to grant a new trial.            *Judgment affirmed.*

May 23, 1896. By two Justices. Argued at the last term.

Ejectment. Before Judge Smith. Haralson superior court. July term, 1895.

Mary J. Burt sued Edmond Blackmon, May 9, 1889, for lot number 990 in the 20th district and 3d section of originally Cherokee, now Haralson county. She obtained a verdict for the premises, and defendant's motion for a new trial, on the general grounds alone, was overruled.

Plaintiff put in evidence the plat and grant from the State to Joseph McKee, dated June 15, 1850. Also, certi-fied copy of the will of Joseph McKee, with power therein to convey the land, and letters testamentary to his wife Ann J. Also, deed from the executrix to plaintiff.

Defendant introduced deed to himself from S. J. Car-

roll, dated January 12, 1881, and testified: I am in possession of the land. Took possession right after the purchase under this deed, in 1881. Tom Carroll was in possession when I bought, living on it in a little log house, and had between a half and three quarters of an acre cleared. I have cultivated that pretty well all the time for three or four years, and then put a family of people in there and they stayed some three or four—I don't know hardly how long, but I have had it in possession all the while, nearly all of it under fence, and since cleared more, some three or four or five acres cleared now on the place. I had under fence about the full lot. I suppose I bought the property like any other man would, because I wanted it, and I bought it in good faith and thought I was getting a genuine title. I was buying from a man I thought would not handle anything else but good titles, Tom Carroll and his wife. The deed is from Tom Carroll and his wife. I never knew of her dealing in lands before that; hadn't known her very long. I suppose Carroll had been dealing in lands. Think he signed the deed, but don't say positively. Really don't know for certain whether I bought from his wife. The house was near the center of the lot. I added a very little to the patch the next year. I cleared about three years later on. Nobody lived in the house in 1881, and I don't think there was anybody in 1882 or 1883. I am not positive, but my recollection is Mr. Williams' folks stayed there in 1884 and they lived there in 1885. I think they stayed there three years. I don't know that any one was in it in 1887, but would not be positive of it. It never had been vacant until it rotted down. I have had some plunder on it, using it as a barn. Was using it as a barn in 1883. It is about a quarter from my house, and the lot joins my other lands. I don't recollect any one living in the house in 1888. I had wheatstraw, fodder, etc., in it. The house is not right on the road, but is in sight of the road. At the time the

suit was filed, I reckon there were three acres in all cleared. It was in the southwest corner of the lot. I don't know exactly what year I did clear it up; didn't charge my memory with the date. I cleared about two acres in this year. Have had between three and five acres fenced in ever since I have been in possession of it, some of it right on the road and some not. The fence I ran right up on the road, but I don't remember whether it was or was not since the suit was filed. All the fence was not there in 1889, but I think some was. The lot is now all in woods pasture. I have cultivated that ever since I cleared it, and put out that fence three years ago when the stock law came back. Right at the house and the patch around the house was not in any field. The field I spoke of clearing after that was over in the southwest corner of the lot; in the fall of 1885, is my recollection. I added to the other field; that took in the lot. The house is about 150 yards from the road. There is a wagon road goes out to it, which has been there ever since the house was put there. It is not a public road, and the other one is a church road and a mill, and the road goes down to the house like any other wagon road a man would have to go to his house. The church road goes through the northeast corner of the lot of land, but the patch in the southwest corner cannot be seen from it, though it can be seen from another public road. The house cannot be seen from the latter road.

For plaintiff one Thomason testified: I don't know whether anybody has been living on the lot from 1881 to 1889. Carroll built a log house there and cleared about half or three quarters of an acre and lived there the latter part of 1880 and first of 1881. I don't remember that anybody lived there then for three or four years. Think the Williams family lived there in 1887, but don't remember that there had been anybody living in it along before that. I don't recollect any other clearing until 1894; think there was then a little clearing on the north side of

the lot that was never fenced in and cultivated. Don't know about the clearing near defendant's field. Defendant might have had some cleared on it, but I am not acquainted with the lot lines. Have not been about the house in four or five years up to 1889. Was there in 1887 and didn't find any clearing on it then, only the patch around the house. If anybody lived in it I don't know it. Defendant might have had something or other in it. I remember that Wiley Clinton, a copper mine hand, may have stayed there two or three months or may be longer. I think defendant has cultivated that patch, or had it done, ever since he owned it.

*Head & Head*, for plaintiff in error.
*McBride & Craven* and *Lloyd Thomas*, contra.